**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **NATURAL ORGANICS, INC.,** | : | |
| | : | |
| **Plaintiff,** | : | **OPINION** |
| | : | **AND ORDER** |
| - against - | : | |
| | : | **01 Civ. 0384 (GBD) (RLE)** |
| **NUTRACEUTICAL CORP., et al.,** | : | |
| | : | |
| **Defendants.** | : | |

**RONALD L. ELLIS, United States Magistrate Judge:**

## I. INTRODUCTION

Before the Court are (1) Plaintiff Natural Organics, Inc.'s ("Natural Organics") motion for review of the Bill of Costs (Doc. No. 61) of Defendants Nutraceutical Corporation and Solaray, Inc. (hereinafter collectively "Nutraceutical") and (2) Nutraceutical's motion for an order directing payment of interest on the award of costs (Doc. No. 68). For the reasons that follow, Natural Organics's Motion is **GRANTED, in part, and DENIED, in part**; and Nutraceutical's Motion is **GRANTED, in part**. The Clerk of Court is directed to **REDUCE** the trial transcript award to $2011.90 and the copying cost award to $2652.45 and **ADD** $751.23 for product samples. All other amounts shall remain the same. Nutraceutical is entitled to a full award of **$30,594.43**, plus postjudgment interest from **September 6, 2006**.

## II. BACKGROUND

On January 18, 2001, Natural Organics filed suit against Nutraceutical for trade dress infringement, trade dress dilution, and unfair competition. The main issue at trial was whether the trade dress of the two competing soy protein drink mixes, Natural Organics's "SPIRU-TEIN" and Nutraceutical's "Soytein," created confusion between the two products in

the marketplace. (Doc. No. 35); *see Natural Organics, Inc. v. Nutraceutical Corp.* (*Natural Organics I*), 426 F.3d 576, 577-78 (2d Cir. 2005). Following a four-day bench trial, District Judge Richard Owen dismissed Natural Organics's Complaint and claims with prejudice, holding "that the products' 'trade dresses are sufficiently distinguishable considering their individual elements and the total impressions they give to customers,' . . . . [and] that Natural Organics 'failed to [show] that the sophisticated consumers who purchase [ ] these types of products are likely to confuse the Soytein trade dress with the SPIRU-TEIN trade dress.'" *See id.* at 578. Judgment was entered on October 3, 2003. Natural Organics appealed. The Second Circuit, reviewing *de novo*, emphasized the application of eight factors as set forth in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir. 1961), and used to determine the likelihood of confusion between two products:

> (1) strength of the plaintiff's trade dress; (2) similarity of the trade dresses; (3) proximity of the products in the marketplace; (4) likelihood that the plaintiff will bridge the gap between the products (enter a market related to that in which the defendant sells its product); (5) evidence of actual confusion; (6) the defendant's bad faith; (7) quality of the defendant's product; and (8) sophistication of the relevant consumer group.

*See Natural Organics I*, 426 F.3d at 578 (referencing *Polaroid Corp.*, 287 F.2d at 495; *Playtex Prods., Inc. v. Georgia-Pacific Corp.*, 390 F.3d 158, 162 (2d Cir. 2004)). As a result, the Second Circuit vacated and remanded on October 19, 2005, holding that remand was required where the trial court failed to expressly consider each *Polaroid* factor before concluding that there was no likelihood of confusion. *See id.* at 576. On remand, the district court once again dismissed Natural Organics's Complaint and claims with prejudice. (Doc. Nos. 49, 50.) Natural Organics appealed to the Second Circuit once again, focusing on three of the eight *Polaroid* factors: trade

dress strength, likelihood of bridging the gap, and evidence of actual confusion. The Second

Circuit, reviewing "the district court's factual findings for clear error, and . . . *de novo*" affirmed

the district court's ruling. *Natural Organics v. Nutraceutical Corp. & Solaray Inc.* (*Natural

Organics II*), 271 F. App'x 89, 90 (2d Cir. 2008). After the ruling, Nutraceutical requested

$34,881.39 be taxed against Natural Organics, including postjudgment interest from the date of

the original district court judgment. On July 3, 2008, the Clerk filed the Bill of Costs,[1] entering

costs for Nutraceutical in the amount of $33,793.65,[2] and denying Nutraceutical's request for

postjudgment interest. (Doc. No. 60.)

Natural Organics has moved pursuant to Rule 54(d)(1) of the Federal Rules of Civil

Procedure for a review of the Bill of Costs entered by the Clerk of Court. (Pl.'s Mem. in Supp. of

its Mot. for the Review of the Bill of Costs ("Pl.'s Review Mem."), July 11, 2008.) Natural

Organics objects to Nutraceutical's request for certain costs on the basis that Nutraceutical has

not adequately supported its expenses, except for $9102.70 for deposition transcripts used at

trial; $7696.90 for witness fees, travel, and mileage; and $50.00 for *pro hac vice* admission fees

for their counsel. (*Id.* at 2.) Nutraceutical challenges Natural Organics's recitation of the relevant

standard(s) of proof and further notes that Natural Organics "failed to appear at and address this

issue at the Clerk's hearing on the Bill of Costs despite the opportunity to do so."[3] (Defs.' Opp'n

---

[1] Signed by the Clerk of Court on June 27, 2008.

[2] The difference between the award requested by Nutraceutical and the Bill of Costs entered by the Clerk represents $1087.74 Nutraceutical requested for costs incurred for product samples that were used as exhibits or demonstrative aids at trial. (Opp'n to Pl.'s Mot. for the Review of the Bill of Costs ("Defs.' Opp'n"), July 28, 2008 at i.)

[3] Any party objecting to cost items must "serve objections in writing prior to or at the time for taxation." LOCAL CIV. R. 54.1(b). Natural Organics filed some form of written objections but did not *appear* before the Clerk of Court in opposition. (*See* Doc. Nos. 58, 59; *see also* Bill of Costs (Doc. No. 60).)

at 1.)

Nutraceutical has moved for an order pursuant to 28 U.S.C. § 1961, directing Natural Organics to pay postjudgment interest on the award of costs from the date of the trial court's initial judgment. Natural Organics opposes Nutraceutical's request and disputes the date from which postjudgment interest should accrue.

### III. DISCUSSION

### A. Legal Standard for Determining Taxation of Costs

Rule 54 states that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." FED. R. CIV. P. 54(d)(1). "Thus, 'such an award against the losing party is the normal rule obtaining in civil litigation, not an exception.'" *Ayiloge v. City of New York*, No. 00 Civ. 5051 (THK), 2002 WL 31907032, at *1 (S.D.N.Y. Dec. 31, 2002) (citing *Whitfield v. Scully*, 241 F.3d 264, 270 (2d Cir. 2001)). Taxation of costs is governed by 28 U.S.C. § 1920, which explicitly grants "[a] judge or clerk of any court of the United States" discretion to tax costs against the losing party in any federal litigation. 28 U.S.C. § 1920. The statute enumerates six categories of expenses which may be taxed as costs: 1) fees of the court clerk and marshal; 2) fees for transcripts "necessarily obtained for use in the case;" 3) printing fees and witness fees; 4) copying fees "where the copies are necessarily obtained for use in the case;" 5) certain docket fees as enumerated in § 1923; and 6) fees of court-appointed experts and interpreters. *Id.* Moreover, the Supreme Court recognizes that the discretion to tax costs "should be sparingly exercised with reference to expenses not specifically allowed by statute." *Farmer v. Arabian American Oil Co.*, 379 U.S. 227, 235 (1964) (quoted in *V-Formation, Inc. v. Benetton Group Spa*, No. 01 Civ. 610 (HB), 2003 WL 21403326,

at *2 (S.D.N.Y. June 17, 2003)).

Initially, "[t]he burden is on the prevailing party to establish to the court's satisfaction that the taxation of costs is justified." *John & Kathryn G. v. Bd. of Educ. of Mount Vernon Pub. Sch.*, 891 F. Supp. 122, 123 (S.D.N.Y. 1995). "After the prevailing party demonstrates the amount of its costs and that they fall within an allowable category of taxable costs, *see* Local Rule 54.1(a), that party enjoys a presumption that its costs will be awarded." *Patterson v. McCarron*, No. 99 Civ. 11078 (RCC), 2005 WL 735954, at *1 (S.D.N.Y. Mar. 30, 2005) (citing *Whitfield*, 241 F.3d at 270); *see also Delta Air Lines, Inc. v. August*, 450 U.S. 346, 351 (1981).

Upon motion, the Court may review the Clerk's taxation of costs. FED. R. CIV. P. 54(d)(1). "Where an unsuccessful litigant appeals the Clerk of Court's award of costs, the district court reviews the award de novo." *Karmel v. City of New York*, No. 00 Civ. 9063 (KMK), 2008 WL 216929, at *1 (S.D.N.Y. Jan. 9, 2008) (referencing *Whitfield*, 241 F.3d at 269). Because of the presumption favoring the prevailing party, the losing party bears the burden of showing why costs should not be awarded and "convincing the district court to exercise its discretion to vacate the Clerk of Court's award of costs." *Id.* at *2; *see also Ayiloge*, 2002 WL 31907032, at *1; *Whitfield*, 241 F.3d at 270.

Local Rule 54.1(c) expands on title 28 U.S.C. § 1920, identifying ten categories of items and their respective taxability: 1) transcripts; 2) depositions; 3) witness fees, mileage, and subsistence; 4) interpreting costs; 5) exemplifications and copies of papers; 6) maps, charts, models, photographs, and summaries; 7) attorney fees and related costs; 8) fees of masters, receivers, commissioners, and court appointed experts; 9) costs for title searches; and 10) docket and miscellaneous fees. LOCAL CIV. R. 54.1(c).

5

**B. Nutraceutical's Request for Taxation of Costs**

**1. Trial Transcript Costs**

Local Rule 54.1 states that "[t]he cost of any part of the original trial transcript that was

necessarily obtained for use in this court or on appeal is taxable." LOCAL CIV. R. 54.1(c)(1).

Nutraceutical sought, and the Clerk awarded, $3309.90 for daily trial transcripts pursuant to

Local Rule 54.1(c)(1) and 28 U.S.C. § 1920(2). (Bill of Costs; Pl.'s Review Mem. at 2.) Natural

Organics argues that Nutraceutical is not entitled to the cost of expedited trial transcripts. (Pl.'s

Review Mem. at 3.) Nutraceutical argues that daily transcripts were necessary, but even if daily

transcripts were not necessary, the Court should tax the cost of the trial transcript at a non-

expedited rate because the trial transcript was necessarily obtained for use in this Court and on

appeal."[4] (Defs.' Opp'n at 3 & n.3 (referencing the Parties extensive use of the trial transcript in

their briefings to the Second Circuit and the District Court on remand).)

Determining whether daily trial transcripts were necessarily obtained is a factual inquiry,

and such daily transcripts are not customary. Awarding the cost of an expedited transcript

requires a heightened showing of the unique circumstances that demanded it. *See Ferrostaal v.*

*M/V Tupungato*, Nos. 03 Civ. 4885, 03 Civ. 6236 (MGC), 2008 WL 2796644, at *1 (S.D.N.Y.

July 17, 2008) (referencing *Carmody v. ProNav Ship Mgmt.*, No. 02 Civ. 7158 (DF), 2004 WL

---

[4]Nutraceutical maintains that it has submitted sufficient evidence of the prevailing non-expedited transcription rate in the Manhattan area: $2.10/page. (Defs.' Opp'n at 4 n.3 (referencing Aff. of Peggy A. Tomsic in Supp. of Defs.' Opp'n to Pl.'s Mot. for the Review of the Bill of Costs ("Tomsic Aff."), July 28, 2008, Ex. 2 (Esquire Deposition Services' Invoices for transcription of the depositions of J. Henrichs, C. Neuberger, and M. Patterson)).) However, the invoices identified by Nutraceutical indicate a rate of $2.90/page for transcription. (*See* Tomsic Aff., Ex. 2 (relevant deposition transcript invoices).) The Court is left to presume that Nutraceutical intentionally discounted the invoice rate identified on Esquire Deposition Services's invoices and is proposing a rate of $2.10/page for non-expedited transcription. From review of the daily trial transcript invoice, it appears that the rate for expedited over-night transcription was $4.10/page for the original and $1.00/page for the diskette. (*See* Tomsic Aff., Ex. 1; Pl.'s Reply Mem. in Supp. of its Mot. for the Review of the Bill of Costs ("Pl.'s Reply"), Aug. 22, 2008.)

1837786 (S.D.N.Y. Aug. 17, 2004)); *see also Perks v. Town of Huntington*, 2009 WL 1459502,

at *1 (2d Cir. May 27, 2009); *Galella v. Onassis*, 487 F.2d 986, 999 (2d Cir. 1973) ("To assess

the losing party with the premium cost of daily transcripts, necessity–beyond the mere

convenience of counsel–must be shown."). Use of the transcripts during trial does not *per se*

establish that they were "necessary," *see John & Kathryn G.*, 891 F. Supp. at 123, and mere

convenience to counsel is insufficient to justify taxing the cost, *see Ferrostaal*, 2008 WL

2796644, at *1-2 (determining that nine-day bench trial did not involve overly complex matters

and thereby reducing costs for expedited transcript awarded to prevailing party); *see also Karmel*,

2008 WL 216929, at *3 (determining that where at least two attorneys were present and

representing defendants at trial in discrimination lawsuit, sufficient notes could be taken during

proceedings to obviate the need for a daily trial transcript); *Bilezikjian v. Baxter Healthcare

Corp.*, No. 92 Civ. 9498 (HB), 1999 WL 945522, at *3 (S.D.N.Y. Oct. 18, 1999) (three attorneys

at trial, case not complex–no justification for daily expedited trial transcripts). On balance, courts

have occasionally concluded that circumstances warranted the awarding of costs for a daily trial

transcript, particularly upon consideration of factors including the amount of representation, the

length of the trial, and the complexity of the issues in the case. *See, e.g.*, *Galella*, 487 F.2d at 999

(concluding that a showing of need for daily transcripts could not be ruled out and identifying the

length of the trial, the large amounts of money in controversy, and the crucial nature of credibility

of witnesses as supporting the need for a daily transcript); *United Rubber, Cork, Linoleum &

Plastic Workers of America, AFL-CIO v. Lee Nat'l Corp.*, 62 F.R.D. 194, 196 (S.D.N.Y. 1974);

*Karibian v. Columbia Univ.*, No. 91 Civ. 3153 (TPG), 1997 WL 2538, at *2 (S.D.N.Y. Jan. 3,

1997) (holding daily trial transcript "entirely reasonable" based on substantial length of trial and

important questions of credibility); *see also DeHoust v. Baxter Healthcare Corp.*, No. 93 Civ. 774 (HB), 1999 WL 280423, at *3 (S.D.N.Y. May 4, 1999) (in a product liability suit, "[t]he defendants were ably represented each day at trial by three attorneys, the trial lasted less than two weeks, and the trial, in the Court's view, did not contain complexities to justify daily expedited trial transcripts.").

Even though Natural Organics correctly states that the cost of expedited trial transcripts is generally not taxable, it does not substantiate why the cost of expedited trial transcripts in this particular case should not be allowed. Nutraceutical maintains that "[t]his was a complex trade dress infringement case where, during the four-day bench trial . . . , nine witnesses testified in person, seven others' testimony was presented by deposition, the credibility of those witnesses was hotly contested, and the Court considered over two hundred admitted exhibits." (Defs.' Opp'n at 3; Tomsic Aff. ¶ 3.) Three attorneys in this case represented Nutraceutical at trial and they used the daily transcripts to record the court's various oral rulings, prepare direct and cross-examinations of the parties' witnesses, and prepare closing argument. (Defs.' Opp'n at 3.) Natural Organics argues that Nutraceutical's statements are unsupported and do not explain why counsel could not have performed the same tasks without expedited transcripts. (Pl.'s Reply at 3.) Additionally, Natural Organics contests Nutraceutical's introduction of evidence as to the price of the standard delivery transcripts as an alternative to the awarding of the cost of expedited transcripts, because the evidence provided was in the form of invoices for deposition transcripts and was not provided to the Clerk with Nutraceutical's application for costs and were only now belatedly submitted. (Pl.'s Reply at 3 n.1.)

This Court is somewhat disadvantaged as it was not privy to the trial and does not have

that immediate experience to inform its determination of the reasonable necessity of expedited trial transcripts. Nevertheless, upon due consideration of the relevant precedent and following review of the record before it, the Court finds that Nutraceutical has not presented substantial justification for the need for daily trial transcripts. While there were numerous witnesses and the trade dress claims at hand were undoubtably complex, Nutraceutical was represented by three attorneys present at all times during the trial, which was relatively short in duration. Moreover, Nutraceutical does not argue that the Court required daily transcripts and fails to adequately support the use of, and need for, those expedited transcripts by counsel during the proceedings. The Court is not convinced that expedited trial transcripts were necessary based on the evidence provided by Nutraceutical. Nevertheless, Natural Organics fails to carry its burden to establish that the trial transcript was not reasonably necessary for Nutraceutical to obtain for subsequent appeals and related matters. Therefore, Nutraceutical's request for taxation of costs for a non-expedited trial transcript is appropriate, Natural Organics's request to vacate this award is **GRANTED, in part**, and the Clerk of Court's is ordered to tax trial transcript costs of **$2011.90** against Natural Organics.[5]

**2. Deposition Transcript Costs**

Nutraceutical sought and the Clerk awarded $11,843.95 for deposition transcripts and copies. (Pl.'s Review Mem. at 4.) Natural Organics argues that Nutraceutical offers conclusory statements on whether the deposition transcripts were used at trial. (*Id.*) It maintains that the

---

[5]Nutraceutical maintains that the prevailing rate for non-expedited transcription in this area is $2.10/page, *see supra* note 4, and the costs of the expedited transcription was $4.10/page for original and $1.00/page for the diskette (Tomsic Aff., Ex. 1). The Court grants Nutraceutical an award of $3.10/page for the 649 pages of trial transcript.

costs of transcripts not read into evidence or used to impeach should not be allowed. (*Id.* at 5.)

Thus, Natural Organics argues that Nutraceutical's request to tax $2573.85 for the deposition

transcripts that were not used at trial,[6] as well as the $167.40 charge[7] for a copy of each transcript

should be disallowed, and Nutraceutical should only receive $9102.70 of deposition costs. (Pl.'s

Review Mem. at 5, 6.) Nutraceutical responds that the $2741.25 for the deposition transcripts and

copies of the individuals at issue should be taxed because each witness testified at trial and

Nutraceutical believed it was reasonably necessary to obtain their deposition transcripts at the

time their depositions were taken. (Defs.' Opp'n at 4; Tomsic Aff. ¶ 4.)

Pursuant to Local Rule 54.1, the cost of the original deposition transcript and one copy is

taxable "if the deposition was used or received in evidence at the trial, whether or not it was read

in its entirety." LOCAL CIV. R. 54.1(c)(2). Depositions taken "solely for discovery," and the

convenience of counsel are not taxable. *U.S. Media Corp. v. Edde Entm't, Inc.*, No. 94 Civ. 4849

(MHD), 1999 WL 498216, at *9 (S.D.N.Y. July 14, 1999). However, "[t]he plain language of

[Local Rule 54.1's] first sentence, providing that depositions are taxable if 'used *or* received in

evidence at the trial' (emphasis added), suggests that the word 'use' extends well beyond explicit

reliance on the deposition as a basis for decision." *Whitfield*, 241 F.3d at 271. Moreover, a

deponent's testimony at trial "alone is sufficient to end the inquiry as to whether their depositions

were 'used' at the trial." *Perry v. Metro. Suburban Bus Auth.*, 236 F.R.D. 110, 112 (E.D.N.Y.

2006) (referencing *DiBella v. Hopkins*, 407 F. Supp. 2d 537, 541 (S.D.N.Y. 2005); *Browne v.*

---

[6] Natural Organics maintains that the cost of each "non-allowable" deposition are as follows: Farris: 69 pages/$200.10; J. Hinrichs: 214 pages/$620.60; T. Hinrichs: 91 pages/$263.90; Lee: 99 pages/$287.10; Macielak: 50 pages/$145.00; Monteleone: 89 pages/$431.65; and Patterson 225 pages/$625.50. (Pl.'s Review Mem. at 6 n.3.)

[7] The copying cost was 837 pages at 20¢/page, totaling $167.40.

*Greensleeves Records, Ltd.*, No. 03 Civ. 7696 (MGC), 2005 WL 2716568, at \*3 (S.D.N.Y. Oct. 21, 2005); *Anderson v. City of New York*, 132 F. Supp. 2d 239, 246 (S.D.N.Y. 2001)).

Moreover, the costs of depositions not used at trial may yet be taxed pursuant to 28 U.S.C. § 1920(2), where they "'appear to have been reasonably necessary to the litigation at the time they were taken.'" *Malloy v. City of New York*, 2000 WL 863464, at \*2 (E.D.N.Y. June 23, 2000) (citing *Crush-Crawford v. Adchem Corp.*, 94 F. Supp. 2d 294, 303 (E.D.N.Y. 2000) (citing *Sim v. N.Y. Mailer's Union No. 6*, No. 97 Civ. 2929 (HB), 1999 WL 674447, at \*1 (S.D.N.Y. Aug. 30, 1999))); *see also U.S. Media Corp.*, 1999 WL 498216, at \*9 ("It suffices that at the time the deposition was taken, it was reasonably expected that the transcript would be used for trial preparation."); *Moon v. Gab Kwon*, No. 99 Civ. 11810 (GEL), 2002 WL 31512816, at \*8 (S.D.N.Y. Nov. 8, 2002) (citing *Anderson*, 132 F. Supp. 2d at 246). Therefore, "the proper inquiry is whether, at the time the deposition was taken, it 'appeared to be reasonably necessary.'" *Anderson*, 132 F. Supp. 2d at 246 (quoting *Elec. Specialty Co. v. Int'l Controls Corp.*, 47 F.R.D. 158, 162 (S.D.N.Y. 1969)).

Nutraceutical first states that all seven witnesses objected to by Natural Organics testified at trial, and Nutraceutical used their deposition transcripts at trial, including for preparation of its witnesses for their direct and cross-examinations and preparing to cross-examine Natural Organics's witness. (Defs.' Opp'n at 5; Tomsic Aff. ¶ 4.) Moreover, Nutraceutical maintains that it was reasonable for it to obtain the transcripts of the six deponents that were its witnesses at the time the depositions were taken. (Defs.' Opp'n at 5.) Finally, Nutraceutical argues that the fact that each of the seven witnesses testified at trial supports the reasonableness of Nutraceutical's determination that their deposition transcripts would be used at trial. (*Id.* at 6.) Natural Organics

11

argues that the conclusory statements of Nutraceutical's counsel that the transcripts were used is hardly enough to substantiate the taxation of the at issue depositions. (Pl.'s Reply at 5.) However, Natural Organics references no authority that would suggest Nutraceutical has failed to establish "use."

Upon review, the Court concludes that Nutraceutical established that the at issue deposition transcripts were reasonably and necessarily obtained for use in the case and it provides invoices to substantiate the costs incurred. Natural Organics has not carried its burden to overcome the presumption that costs are appropriately imposed. Thus, Natural Organics's request to reduce this award of costs is **DENIED**.

### 3. Witness Fees, Mileage, and Subsistence

Nutraceutical requested, and the Clerk taxed, $13,284.90 for witness fees, mileage, and subsistence. (Bill of Costs (Doc. No. 60).) Natural Organics challenges the award of subsistence fees to witnesses. It argues that $5588.00 of the costs entered in the Bill of Costs should not be allowed because Nutraceutical has not substantiated the subsistence allowances and "ha[s] not adequately justified the need for overnight accommodations for any witness." (Pl.'s Review Mem. at 6-7.) Nutraceutical replies that subsistence for each witness was proper and that all witnesses were required to travel from their out-of-state residence to Manhattan to testify at trial or deposition. (Defs.' Opp'n at 6-7.) Nutraceutical notes that "[a] subsistence allowance for a witness shall be paid in an amount not to exceed the maximum per diem allowance prescribed by the Administrator of General Services." (*Id.* at 6 (citing 28 U.S.C. § 1821(d)(1), (2)).) Nutraceutical reports that the maximum per diem allowance prescribed by the Administrator in 2002 for the Manhattan area was $254/day. (*Id.* (citing www.gsa.gov).) Nutraceutical notes that

12

all the witnesses were required to travel from either Utah or Michigan to testify at trial and/or by deposition, and given that distance, an overnight stay was required. (*Id.* at 7; Tomsic Aff. ¶ 6.) Nutraceutical maintains that each witness was entitled to at least $254/day for two days and that in the case of J. Hinrichs and Patterson, each was also entitled to $254/day for their four days of attendance at trial. (Defs.' Opp'n at 7 & n.6.) Further, Nutraceutical linked the witnesses' stays to the actual dates and length of their testimony. (*Id.* at 7 (referencing Itemization of Costs, Ex. 1; Tomsic Aff. ¶ 6, Exs. 3-11).)

Pursuant to 28 U.S.C. § 1920(3), fees and disbursements for printing and witnesses may be taxed as costs. Local Rule 54.1 states that "[f]ees for expert witnesses are taxable only to the extent of fees for ordinary witnesses unless prior court approval was obtained." LOCAL CIV. R. 54.1(c)(3). Section 1920(3) is further limited by § 1821, which details the allowable per diem, mileage, and subsistence costs for witnesses. *See Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 292 (2006). Witness fees are taxable if the witness takes the stand or is deposed. Subsistence pursuant to § 1821 is allowable if it is not practical for the witness to return to his or her residence from day to day. *See N.Y. Flour Distribs., Inc. v. Cargill Flour Milling*, 1996 WL 19185, at *1 (E.D.N.Y. Jan. 12, 1996); *see also DeHoust*, 1999 WL 280423, at *4. The party moving for taxation of costs must illustrate a "good reason why these witnesses needed to stay overnight." *DeHoust*, 1999 WL 280423, at *4.

Upon review of the record, the invoices presented by Nutraceutical indicate the dates when each witness was deposed and/or attended trial. Natural Organics has failed to meet its burden to overcome the presumption granting Nutraceutical's witnesses reasonable subsistence costs. Moreover, Natural Organics has not challenged the amount of the subsistence fee

identified by Nutraceutical and entered by the Clerk. Therefore, because Nutraceutical has submitted voluminous receipts and records which substantiate its costs and Natural Organics has failed to raise any material reason as to why these witnesses did not have to stay overnight and should not be provided the allowable subsistence, Nutraceutical's requests of $13,284.90 for witness fees, mileage and subsistence is upheld and Natural Organics's motion to reduce this award is **DENIED**.

### 4. Model Exemplifications

Pursuant to § 1920(4), the Court may tax as costs "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case." 28 U.S.C. § 1920(4). Local Rule 54.1 states that "[a] copy of an exhibit is taxable if the original was not available and the copy was used or received in evidence." LOCAL CIV. R. 54.1(c)(5). However, "[t]he costs of copies used for the convenience of counsel or the court are not taxable." *Id.* Further, costs of photographs are taxable if used or received in evidence and "maps, charts, and models, including computer generated models, are *not* taxable except by order of court." LOCAL CIV. R. 54.1(c)(6) (emphasis added). Therefore, with regard to copying costs, the requesting party must at least "specif[y] what portion, if any, of [the] copying costs were incurred in creating exhibits that were used at trial or received in evidence." *Carbonell v. Acrish*, 154 F. Supp. 2d 552, 569 (S.D.N.Y. 2001). Furthermore, "[i]n this circuit, expenses for photocopies have been expressly identified as 'ordinarily charged to clients' and therefore recoverable . . . ." *Anderson*, 132 F. Supp. 2d at 246 (ruling taxation of copying costs appropriate pursuant to 42 U.S.C. § 1988).

Nutraceutical has requested $6392.64 for models, exemplifications, and copies. (Defs.'

Opp'n at 8 n.8.) In entering the Bill of Costs, the Clerk awarded only $5304.90, deducting

$1087.74 which represents the total cost of the product samples which Nutraceutical maintains it

used as exhibits or demonstrative aids at trial. (*Id.*) Natural Organics argues that the costs entered

by the Clerk should not be allowed because Nutraceutical has not adequately explained why the

copies were necessarily obtained for use in the case. (Pl.'s Review Mem. at 7-8.) Additionally,

Natural Organics maintains that the Clerk correctly determined that the cost of "product samples"

were beyond the scope of items that may be taxable pursuant to Local Rule 54.1(c)(6), and

maintains that Nutraceutical failed to identify the "product samples" it claims were necessarily

obtained for use in the case. (*Id.* at 8.) Natural Organics argues that "[t]he costs of product

samples are not allowable unless the Court issued an Order stating that these costs were taxable."

(*Id.*) Nutraceutical responds that the copy costs are allowable because the court has authorized

such taxation through 28 U.S.C. § 1920(4). (Defs.' Opp'n at 8.) Further, Nutraceutical argues

that while there is no statute explicitly addressing whether the product sample costs are

recoverable, under the circumstances here, where the product samples for which Nutraceutical

sought costs were either admitted as exhibits, or used as demonstrative aids, models, or in

photographs at trial, the costs should be taxed. (Tomsic Aff. ¶ 8.) Finally, Nutraceutical asserts

that "[e]ach separate cost is specifically itemized by type, date, reason taxable[,] and amount. . . .

[and] the underlying invoices for each item demonstrates that item was necessarily obtained for

use in the case . . . ." (Defs.' Opp'n at 9.)

Upon review of the record and the relevant sections of Local Rule 54.1 and 28 U.S.C. §

1920, this Court concludes that product samples in this action are in fact demonstrative aids and

were reasonably used and necessary at the trial, where trade dress infringement was a central

issue. Therefore, it is appropriate to order the taxation of such costs to the prevailing party. *See Dibella*, 407 F. Supp. 2d at 540 ("[B]low-ups, digital presentations of scanned documents, and other computer graphics serve the same function as exhibits and other papers used at trial, and there is no logical reason to differentiate between the former and the latter in terms of their taxability of costs").

After carefully considering Nutraceutical's invoices, the Court concludes that it has, with certain limitations, identified what exhibits were copied and what expenses it incurred in purchasing product samples for use at trial. While Nutraceutical provided voluminous receipts and records to substantiate certain costs, it has not adequately detailed the use of such copies and product samples at the trial or in preparation for the trial itself. For example, in reviewing invoices accounting for copying costs, descriptive entries such as "trial notebooks," "client documents," and "originals copied three times" raise questions for the Court as to the propriety of taxing these costs. Nutraceutical provides no further specificity about the copies or their use at trial. Thus Nutraceutical's statements that the copies were necessarily obtained for use in the case cannot be sufficiently verified and inconsistencies among the receipts produced inhibit the possibility of a simple recalculation. Accordingly, the Court finds that Nutraceutical's request for copy costs should be reduced by half to **$2652.45.** *See New Leadership Comm. v. Davidson*, 23 F. Supp. 2d 301, 312 (E.D.N.Y.1998) (citing *Baker v. Power Secs. Corp.*, 174 F.R.D. 292, 294 (W.D.N.Y. 1997) (reducing the amount sought for photocopies where it was not clear whether the sum requested included multiple copies of the same documents for the convenience of counsel)).

With respect to Nutraceutical's product samples, the Court finds that the invoices and

receipts provided (Tomsic Aff., Ex. 13) are insufficient to justify the full sum sought by

Nutraceutical. Furthermore, while the majority of the costs are identified in the expense reports

of Stan Soper, the Court concludes that those reports are not sufficient evidence of the costs

incurred by Nutraceutical for product samples used at trial. The Court instead relies on the

receipts provided by Nutraceutical, and credits only those legible receipts that are for items that

can be presumed to have been used as product samples and trial exhibits. Therefore, the Clerk of

the Court is ordered to enter taxation of costs for product samples in the amount of **$751.23**.[8] In

sum, the Clerk is ordered to enter taxation of costs for copies and product samples in the amount

of **$3403.68**.

## C. Postjudgment Interest

As the prevailing party, Nutraceutical moves for postjudgment interest on its award of

costs. (Mem. in Supp. of Defs.' Mot. For Order Directing Payment of Interest on Award of Costs

("Defs.' Interest Mem."), July 28, 2008.) In entering the Bill of Costs, the Clerk of Court denied

Nutraceutical's request for interest on costs from October 3, 2003, the date of the entry of the

trial court's initial judgment. The Parties dispute the date from which postjudgment interest on an

award of costs should begin to accrue. The options on this case's continuum as argued by the

Parties include: 1) the date of the original Judgment by the district court; 2) the date of the

Amended Judgment issued by the district court following the Second Circuit's vacatur and

remand of the original Opinion; 3) when the Clerk initially entered the Bill of Costs; or 4) when

this Court makes its ruling on the instant motion for review of the Bill of Costs.

---

[8]The Court has allowed taxation of product samples costs for the following charges, as substantiated by receipts provided by Nutraceutical (*see* Tomsic Aff., Ex. 13): $172.91; $50.66; $80.66; $192.39; $212.87; $30.42; $11.32.

Pursuant to 28 U.S.C. § 1961, "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court. . . . Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[] the date of the judgment." 28 U.S.C. § 1961(a). Entitlement to postjudgment interest extends to all money judgments, including awards of attorneys' fees and costs. *See Gamble v. East Bronx N.A.A.C.P. Day Care Center, Inc.*, No. 04 Civ. 1198 (KMW) (HBP), 2008 WL 2115237, at *3 (S.D.N.Y. May 15, 2008); *Alston v. Wall St. Garage Parking Corp.*, No. 03 Civ. 5418 (RLC) (JCF), 2004 WL 1194595, at *2 (S.D.N.Y. May 28, 2004).

In the instant action, the question of the date from which postjudgment interest should accrue is a two-part inquiry. While this parsing is somewhat artificial, it lends clarity to the issues at hand. The first question the Court will address is whether postjudgment interest on taxable costs should run from the date of a judgment explicitly or impliedly granting an award or the later date of when such an award is quantified by the Court. Secondly, the Court will address the proper date of judgment, from which postjudgment interest should accrue, where a case has been subject to multiple appeals.

"Postjudgment interest is designed to compensate the plaintiff for the delay it suffers from the time damages are reduced to an enforceable judgment to the time the defendant pays the judgment." *Andrulonis v. United States*, 26 F.3d 1224, 1230 (2d Cir. 1994). "Where the judgment on damages was not supported by the evidence, the damages have not been 'ascertained' in any meaningful way[,]" and the accrual of postjudgment interest should not commence until that point. *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 836

18

(1990). The Second Circuit has relied on *Kaiser Aluminum* to hold that "under 28 U.S.C. § 1961(a), postjudgment interest commences from the date a judgment is 'ascertained in a meaningful way.'" *Padberg v. Giuliani*, 295 F. App'x 455, 457 (2d Cir. 2008) (quoting *Kaiser Aluminum*, 494 U.S. at 835-36); *see also Estate of Calloway v. Marvel Entm't Group*, 9 F.3d 237, 242 (2d Cir. 1993), *cert. denied*, 511 U.S. 1081 (1994) (finding counsel liable for interest on Rule 11 sanctions only from date judgment imposed joint and several liability on counsel, rather than earlier date when sanctions imposed on client). As such, calculation of postjudgment interest under § 1961 must accrue from the "date of the entry of the judgment," one that is "ascertained in a meaningful way" and "supported by the evidence." *Andrulonis*, 26 F.3d at 1233 (internal alterations omitted); *see also Indu Craft, Inc. v. Bank of Baroda*, 87 F.3d 614, 620 (2d Cir. 1996), *cert. denied*, 519 U.S. 1041 (1996) (awarding interest from the date of the original judgment where original judgment was reinstated upon a finding that it had been "sufficiently substantiated by the evidence"); *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 55 (2d Cir. 1998) (prevailing party entitled to postjudgment interest on front pay, attorneys' fees, and costs from date when judgment was ascertained in a meaningful way).

Determining whether § 1961 postjudgment interest should accrue from the date of judgment establishing the right to an award of attorneys' fees and costs[9] or from the date of the judgment "establishing its quantum" has resulted in a split amongst the Circuits that have addressed it and remains an open issue for both the Supreme Court and the Second Circuit. *See*

---

[9]The Court's research found no binding precedent addressing solely the issue of taxable costs. *But see Georgia Ass'n of Retarded Citizens v. McDaniel*, 855 F.2d 794, 799 (11th Cir. 1988) ("[W]hen a district court taxes costs against a losing party, the award of costs bears interest from the date of the original judgment. . . ."). Other Circuits have treated the question of postjudgment interest for such costs similarly to the treatment of attorneys' fees, and the Court looks to these cases for possible analysis.

*Albahary v. City & Town of Bristol, Conn.*, 96 F. Supp. 2d 121 (D. Conn. 2000); *see also Nicholson v. Williams*, 2004 WL 4760138, at *3 (E.D.N.Y. Oct. 25, 2004); *Hubbard v. Total Commc'ns, Inc.*, 2009 WL 1619600 (D. Conn. June 10, 2009). The Circuit divide aligns the Fifth, Sixth, Eighth, Ninth, Eleventh, and Federal Circuits, adopting the "majority approach," against the Third, Seventh, and Tenth Circuits, with the "minority approach." *Albahary*, 96 F. Supp. 2d at 123 (citing authority); *see also Nicholson*, 2004 WL 4760138, at *3-4 (same). The "majority approach" holds that "interest should accrue from the date the party becomes entitled to the award even if that award is not quantified until a later point." *Albahary*, 96 F. Supp. 2d at 123 (reasoning that "[w]hile the fee-paying party is under no legal compulsion to satisfy its obligation before quantification, it also 'suffers no prejudice from any delay in quantifying the award because it has use of the money in the interim and because the statutory interest rate is tied to the U.S. Treasury Bill rate.'" (quoting *Jenkins by Agyei v. State of Missouri*, 931 F.2d 1273 (8th Cir. 1991))); *see also Boehner v. McDermott*, 541 F. Supp. 2d 310, 321-22 (D.D.C. 2008). The "minority approach" reasons that interest should only run from the date the fee award is quantified "since before then the [prevailing party's] claim for unpaid attorney's fees is unliquidated and therefore is not a 'money judgment' for purposes of Section 1961." *Albahary*, 96 F. Supp. 2d at 123 (citing authority). The split among the Circuits is also reflected within this Circuit. A number of opinions have agreed with the majority view. *See, e.g.*, *Albahary*, 96 F. Supp. 2d at 123; *Nicholson*, 2004 WL 4760138, at *3-4; *Aiello v. Town of Brookhaven*, 2005 WL 1397202, at *9 (E.D.N.Y. June 13, 2005) (agreeing with *Albahary*); *Williamsburg Fair Housing Comm. v. Ross-Rodney Housing Corp.*, 599 F. Supp. 509, 523 (S.D.N.Y. 1984). Others have awarded postjudgment interest to run from the date of the entry of the quantified award of

attorneys' fees and costs. *See, e.g.*, *Petrovits v. New York City Transit Auth.*, No. 95 Civ. 9872 (DFE), 2004 WL 42258 (S.D.N.Y. Jan. 7, 2004); *Collins v. Stolzenberg*, 970 F. Supp. 303, 305 (S.D.N.Y. 1997). The decisions in *Albahary* and *Nicholson* provide a searching review and analysis of the Circuit opinions and reasoning, and the Court finds them persuasive. *See Albahary*, 96 F. Supp. 2d at 124; *see also Nicholson*, 2004 WL 4760138, at *3. The majority rule comports with the policies underlying *Kaiser Aluminum* and its progeny in the Second Circuit as well as subsequent Second Circuit jurisprudence about the legislative intent for establishing § 1961. Thus, postjudgment interest on taxable costs should generally accrue from judgment identifying the prevailing party, as § 1920 then establishes its right to tax costs.

Section 1961 does not indicate when postjudgment interest should accrue where a district court's judgment has been appealed. *See Lewis v. Whelan*, 99 F.3d 542, 545 (2d Cir. 1996). Rule 37 of the Federal Rules of Appellate Procedure states that "[u]nless the law provides otherwise, if a money judgment in a civil case is affirmed, whatever interest is allowed by law shall be payable from the date when the district court's judgment was entered. . . . If the court modifies or reverses a judgment with a direction that a money judgment be entered in the district court, the mandate must contain instructions about the allowance of interest." FED. R. APP. P. 37(a)-(b); *see Kotsopoulos v. Asturia Shipping Co.*, 467 F.2d 91, 93 n.2 (2d Cir. 1972) (if money judgment affirmed, interest attaches as if no appeal taken); *see also New England Ins. Co. v. Healthcare Underwriters Mut. Ins. Co.*, 352 F.3d 599 (2d Cir. 2003). Further, "[i]n general, where a first judgment lacks an evidentiary or legal basis, post-judgment interest accrues from the date of the second judgment; where the original judgment is basically sound but is modified on remand, post-judgment interest accrues from the date of the first judgment." *Lewis*, 99 F.3d at 545; *see*

21

*also Estate of Calloway*, 9 F.3d 237 at 241-42. Here, the Second Circuit has agreed with the reasoning of courts in the First, Eighth, and Tenth Circuits that "where [a] first judgement is vacated because it lacks a legal basis or requires further factual development, the vacated award should be treated as a nullity and post-judgment interest therefore accrues from the entry of judgment on remand." *Lewis*, 99 F.3d at 545 (citing *Cordero v. De Jesus-Mendez*, 922 F.2d 11, 16 (1st Cir. 1990); *Hysell v. Iowa Pub. Serv. Co.*, 559 F.2d 468, 476 (8th Cir. 1977); *FDIC v. Rocket Oil Co.*, 865 F.2d 1158, 1161 (10th Cir. 1989)); *see also Vt. Microsystems, Inc. v. Autodesk, Inc.*, 138 F.3d 449, 452-53 (2d Cir. 1998) (ordering computation of postjudgment interest from date of the revised judgment, following the Second Circuit's vacatur of the initial judgment upon a finding that the trial judge "erroneous[ly] appli[ed]" the relevant law); *Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 103 (2d Cir. 2004) ("Rule 37(b) serves as a reminder of the *Briggs* rule which holds that if the mandate does not contain such instructions, the district court is powerless to award interest during the period between its original judgment and the judgment it enters on remand . . . .") (referencing *Briggs v. Pa. R.R. Co.*, 334 U.S. 304, 306 (1948)).

Following Natural Organics's initial appeal to the Second Circuit that resulted in vacatur and remand, the district court issued an Amended Opinion on or about July 5, 2006, and judgment was again entered in favor of Nutraceutical on September 6, 2006, from which Natural Organics again appealed. The Second Circuit affirmed the Amended Opinion[10] by Summary

[10]Nutraceutical makes the argument that the Second Circuit actually affirmed the original Opinion of the district court. (Defs.' Interest Mem. at 2.) To support this it notes that the 2008 Summary Order opens by identifying Natural Organics's appeal from an order "entered August 20, 2003, which dismissed Natural Organics' complaint with prejudice." *Natural Organics II*, 271 F. App'x at 89. For two reasons this Court finds that the mere notation of the earlier Opinion date in the Second Circuit's introduction would not suggest that the Second Circuit was attempting to retroactively endorse that earlier Opinion. First, despite mention of the original Opinion date, the plain

Order entered March 27, 2008. *Natural Organics II*, 271 F. App'x 89; (Pl.'s Mem. in Opp'n to

Defs.' Mot. for Order Directing Payment of Interest on Award of Costs ("Pl.'s Opp'n"), Aug. 22,

2008 at 2). Natural Organics argues that interest should not begin to accrue until after

Nutraceutical's "allowable costs are quantified and the Clerk enters an order taxing them against

Natural Organics" (Pl.'s Review Mem. at 9), that is, from the date on which the Court enters its

ruling on Natural Organics's Motion for Review of the Bill of Costs (*id.* at 10). Nutraceutical

maintains that interest should run from October 3, 2003, the date the court entered judgment, and

should be awarded at a rate of 1.22% per annum from that date. (Defs.' Interest Mem. at 1-2

(referencing www.federalreserve.gov/releases/h15/20030929, wherein the Treasury indicates that

the average rate for the calendar week ending September 26, 2003, was 1.22%).)

    The Second Circuit's original decision to vacate and remand resulted from its finding that

the trial court failed to expressly consider each *Polaroid* factor before concluding that there was

no likelihood of confusion. *See Natural Organics I*, 426 F.3d at 578-79. The Second Circuit

noted that "[t]he parties presented considerable evidence at trial on factors that the district court

did not discuss," *id.* at 580, and found that the district judge failed to articulate a finding as to

each of the *Polaroid* factors. The Second Circuit was thus deprived of the information it needed

to review the decision. *Id.* at 579-80. Upon these facts there is merit to Nutraceutical's argument

that in this instance the original judgment was entered based on substantial evidence presented to

the trial court, was basically sound and merely modified upon vacatur and remand, and therefore

---

language of the Summary Order suggests the Second Circuit was reviewing the Amended Opinion. *Natural Organics II*, 271 F. App'x at 89 ("Our *de novo* review of the eight *Polaroid* factors convinces us that Judge Owen did not err in determining that Natural Organics failed to show a likelihood of confusion."). Secondly, absent an express mandate that postjudgment interest should accrue from the original, vacated judgment, Appellate Procedure Rule 37 and policy considerations preclude such an interpretation of the Summary Order.

judgment was ascertained in a meaningful way such that postjudgment interest should run from that date. (*See* Defs.' Interest Mem. at 3.) However, the Second Circuit found that the *Polaroid* factor that the district court relied on in its Opinion was not dispositive, *Natural Organics I*, 426 F.3d at 580, and this Court believes that conclusion to mean that the original Opinion could not have been a judgment ascertained in a meaningful way.

Natural Organics maintains that this Court should agree with the "minority rule" and find that postjudgment interest should not accrue until an entry of Bill of Costs. This argument is unavailing. As aforementioned, this Court concludes that postjudgment interest should run from the entry of a judgment for the prevailing party as to taxable costs. (*See* Pl.'s Opp'n at 4; Reply Mem. in Supp. of Defs.' Mot. for Order Directing Payment of Interest on Award of Costs ("Defs.' Reply"), Aug. 29, 2008 at 1-2.)

Finally, the policy rationale for postjudgment interest supports a finding that the 2006 Judgment is the appropriate starting point for interest. In the context of taxable costs, the prevailing party is bound by statute and local rule to file for costs by a date certain. *See* 28 U.S.C. § 1920; Local Civ. R. 54.1(a) ("Within thirty (30) days after the entry of final judgment, or, in the case of an appeal by any party, within thirty (30) days after the final disposition of the appeal . . . any party seeking to recover costs shall file with the clerk a request to tax costs . . . ."). Therefore, the prevailing party could not unjustifiably delay so as to accrue additional interest against the losing party. *Cf. Padberg*, 295 F. App'x at 457. This schedule mitigates against prejudice resulting from granting postjudgment interest on an unquantified award. *See Andrulonis*, 26 F.3d at 1230; *see also Kaiser Aluminum*, 494 U.S. at 836. Moreover, any delay in actual quantification of the award is nominal.

24

For these reasons, postjudgment interest on the Bill of Costs should begin to accrue from the second district court judgment, September 6, 2006.

## IV. CONCLUSION

For the foregoing reasons, Natural Organics's Motion is **GRANTED, in part, and DENIED, in part**; and Nutraceutical's Motion is **GRANTED, in part**. The Clerk of Court is directed to **REDUCE** the trial transcript award to $2011.90 and the copying cost award to $2652.45 and **ADD** $751.23 for product samples. All other amounts shall remain the same. Nutraceutical is entitled to a full award of **$30,594.43**, plus postjudgment interest from

**September 6, 2006**.

**SO ORDERED this 6th day of August 2009**
**New York, New York**

**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**

25